[Civ. No. 14462. First Dist., Div. One. June 26, 1950.]

SID W. ARNOLD, Appellant, v. HARRY EDWARD HOWELL et al., Respondents.

Doyle & Clecak for Appellant.

Arthur J. Healy for Respondents.

BRAY, J.—In an action by plaintiff to set aside an order of adoption, a general and special demurrer to the first amended complaint was sustained without leave to amend. Plaintiff appeals from the judgment.*

### QUESTION PRESENTED

Does a complaint charging that a father's consent to the adoption of his minor child was obtained by misrepresentation, and given while he was unable to realize the consequences of his act, set forth a cause of action?

### AMENDED COMPLAINT

The allegations of the amended complaint follow:

Diana Grace Arnold, born February 13, 1942, is the child of plaintiff and Janet Riede Arnold. Janet died in 1943. Defendants Frank I. Williams and Edith M. Williams are the child's maternal grandparents. Defendant Alethea Anne Howell is the daughter of Frank and Edith Williams and resides with them, and is the maternal aunt of the child. Defendant Harry Edward Howell is her husband.

---

*An appeal from the *order* sustaining the demurrer was denied by this court, Division Two, in *Arnold* v. *Howell,* 88 Cal.App.2d 526 [199 P.2d 16], on the ground that such an order is not appealable,

In February, 1944, plaintiff was called to active duty in the United States Navy, and left the child in the care of said grandparents. Edith Williams stated to plaintiff that she had obtained legal advice and that the only way to protect Diana adequately in the event that plaintiff did not return from his overseas assignment in the United States Navy was to permit her to adopt Diana before plaintiff was shipped out of this country; that Diana would always be his child and that in the event plaintiff returned from overseas the child would be returned to his custody. Plaintiff relied upon the promises of the said defendant, Edith, and consented to the adoption of Diana by the said Frank and Edith. In August, 1944, Edith and her daughter, defendant Alethea, advised plaintiff that the State Department of Social Welfare would not permit the said Frank and Edith to adopt Diana because of their advanced age. Alethea urged plaintiff to consent to the adoption of Diana by Alethea and Harry, stating that an adoption was the only way to protect the best interest of the child during the time plaintiff was overseas and if he were killed during the war; that if he returned from overseas service she and her husband would return the custody of the child to plaintiff. Alethea, at the time she made said statements, did not intend to return custody of the child to plaintiff when he returned from overseas service but made said statements knowing that plaintiff would rely on such statements and for the purpose of securing plaintiff's consent to the adoption.

"That in August, 1944, the organization to which plaintiff was assigned in the United States Navy was alerted which meant that plaintiff was subject to overseas shipment with no more than forty-eight hours notice; that extremely heavy casualties were being sustained in the Pacific island area where plaintiff was scheduled for overseas assignment; that plaintiff was laboring under a tremendous emotional strain due to his imminent overseas shipment and the attempts of the said Alethea . . . and Edith . . . to convince him that the welfare of his daughter required him to consent to the adoption; that the said Alethea . . . and the said Edith . . . knew of the emotional condition of the plaintiff and unduly influenced and coerced plaintiff to sign the consent to said adoption by planting in plaintiff's mind the fixed idea that he would not return from his overseas assignment and by fraudulently representing that if plaintiff returned he could regain custody of his child;

"That plaintiff, as a result of the death of his wife, anxiety

over the welfare of his daughter, the insinuations of Alethea . . . and Edith . . . concerning his probable death, and his imminent shipment overseas became mentally unbalanced and while mentally unbalanced and unable to realize what he was doing or the consequences thereof, the plaintiff signed his consent to the adoption of the said Diana . . . by the said Alethea . . . and Harry . . . on the 30th day of August, 1944; that the plaintiff remained mentally unbalanced until his shipment overseas in the latter part of May, 1945;

''That the said Edith . . ., in making the hereinabove statements to plaintiff concerning the adoption of the said Diana . . . was acting for and on behalf of the said Alethea . . . and Harry . . . and with their consent and approval; . . .''

On May 10, 1945, an order providing for the adoption of said child by Alethea and Harry was signed by Judge Robert McWilliams. Said order was based upon the fraudulent representation by Alethea and Harry that plaintiff had fully and freely consented to said adoption.

All during plaintiff's service in the armed forces Diana received allotment checks from plaintiff which were used to defray her expenses. She was the sole beneficiary of a $10,000 insurance policy carried by plaintiff. By such action plaintiff indicated that he had not relinquished or attempted to relinquish his duty towards his daughter. Alethea and Harry, by accepting said allotment checks for Diana's use and benefit, indicated that they had not assumed a parental relationship towards her.

Plaintiff returned from overseas service and was discharged from the armed forces on January 10, 1946, and since that time has been attempting to secure consent to return Diana's custody and control to him. At first the reluctance of Alethea and Harry was alleged to be the necessity for plaintiff to restablish himself in civilian life. He has now so reestablished himself and has now discovered that they had no intention at any time of returning the custody of said child. Plaintiff prays for an order setting aside the order of adoption and returning the custody and control of the child to him.

Defendants demurred to the complaint generally and specially.

## CAUSE OF ACTION

While the complaint is not a model of pleading and perhaps is subject to special demurrer, it does state the basis of a cause of action to have the order of adoption set aside on

the ground that plaintiff's consent to such order (which, of course, could not be obtained without his consent) was based on misrepresentation and lack of understanding, due to mental stress, of his act in giving consent.

While, perhaps, some of the allegations should be amplified and made clearer, still the complaint alleges that his consent was obtained through the representation of the adopters and the maternal grandmother acting for them, that the adoption was necessary to protect the child and was only a temporary measure, the child to be returned to him after his overseas service. The latter representation was made without intent to carry it out. He alleges that due to the insinuations of defendants, his own state of mind, as a result of the death of his wife and his anxiety over the welfare of his daughter, he was mentally unbalanced and unable to realize what he was doing or its consequences. If these allegations are true, the order of adoption was made without the consent of plaintiff.

### Extrinsic or Intrinsic Fraud

Defendants contend the matters alleged in the complaint, if true, constitute intrinsic fraud, and cite *Gale* v. *Witt,* 31 Cal.2d 362 [188 P.2d 755], to the effect that a judgment of a court of equity can only be set aside for extrinsic fraud. However, the definition given in that case shows that the fraud complained of here is extrinsic fraud. "The fraud which will justify the setting aside of a final judgment by a court of equity must be of such character as prevents a trial of the issues presented to the court for determination." (P. 365.)

A consent which is required before a court can act, and which is based upon misrepresentation or given by a person who is unable to comprehend its meaning, prevents a fair and full hearing of the issues which the court is required to determine. As said in *Matter of Cozza,* 163 Cal. 514 [126 P. 161, Ann.Cas. 1914A 214], "Consent lies at the foundation of statutes of adoption . . ." (P. 522.) In *Pico* v. *Cohn,* 91 Cal. 129 [25 P. 970, 27 P. 537, 25 Am.St.Rep. 159, 13 L.R.A. 336], cited by defendants, the court, after stating the general rule that where parties have submitted a matter to a court for determination, or have had an opportunity to submit it, the court's determination must be final, gives the exception to that rule: ". . . unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair sub-

mission of the controversy." (P. 133.) Here the allegations of the complaint bring the case within the exception, first, that the court has been imposed upon, because it acted upon a consent obtained by misrepresentation and upon what was not a true consent, and secondly, because, for the same reasons, the prevailing party prevented a fair submission of the matter. See *Rogers* v. *Mulkey*, 63 Cal.App.2d 567 [147 P.2d 62], where the court says (p. 575) : "Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court. [Citations.] "

With certain statutory exceptions, consent to an adoption is considered a jurisdictional prerequisite. (1 Cal.Jur. 436.) "Where required, consent is ordinarily held an essential requisite to jurisdiction on the part of the court to make an order of adoption unless conditions or exceptions exist, specially provided by the statute itself, which render consent unnecessary. . . . Consent must be free and voluntary and include consent to all the legal consequences of adoption . . ." (1 Am.Jur. p. 639, § 36.)

"It seems clear that legal consent to an adoption actually does not exist where it is obtained through the fraud, duress, or other overreaching practices of the adopting parents or others, and that where it is so obtained, the jurisdictional prerequisite to a valid adoption is lacking. If considered as a jurisdictional defect, the decree would be open to a collateral, as well as a direct, attack.

"But aside from the question whether a fraudulently obtained consent is jurisdictional, it may be said that the courts uniformly recognize that where a natural parent's consent to an adoption has been obtained through fraud, duress, mistake, etc., such parent is entitled to have the decree of adoption set aside on such grounds." (2 A.L.R.2d 887, annotation: "Annulment or vacation of adoption decree by adopting parent or natural parent consenting to adoption," at p. 897.)

No California case has been found which considered whether extrinsic fraud is necessary in order to set aside an adoption.

In 2 Corpus Juris Secundum 434, section 45b, it is pointed out that some jurisdictions apply the usual equity rule of extrinsic fraud, but in other jurisdictions "this rule does not apply to adoption proceedings, since the power to enter such an order is special and is not exercised according to the course of the common law." (P. 435.) In 1 American Jurisprudence 671-2, section 72, on vacation or annulment of adop-

tion, it is said: ''. . . but the better view seems to be that such a decree may be vacated upon such grounds as would entitle the court to vacate any other order or decree. Following this principle, a decree of adoption may be vacated by a petition to the court which entered it, or by a suit in equity, for fraud in obtaining it, as where, at the time the decree was sought and entered, the adopting parent was of weak and unsound mind, and subjected to undue influence.''

In the 1949 Pocket Part to note 20, page 672, it is said: ''And the power of a court of general equitable jurisdiction to annul, vacate, or set aside an order of adoption under proper circumstances seems to be generally conceded [citing 2 A.L.R. 2d 890]. The welfare of the child is the paramount consideration in all courts of record in proceedings involving the custody of children . . . So also, while a decree will be set aside or annulled, where it is shown that the consent of the natural parent was obtained through fraud or duress, . . . the courts carefully examine allegations of this nature by the natural parents, and have not hesitated to deny an annulment where they were not fully substantiated.''

Appellant alleges specific promises on the part of Alethea and Edith that he would regain the custody of his daughter after his return from overseas. This is a type of fraud which a court with equitable powers may consider. (31 Am.Jur. 241.)

As said in *Wells* v. *Zenz*, 83 Cal.App. 137 [256 P. 484], where the court set aside an order of adoption for false statements in the affidavit for publication of the citation (p. 140): ''No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and unfair ways by which another is deceived. (*Armstrong* v. *Wasson*, 93 Okl. 262 [220 P. 643].)''

### SPECIAL DEMURRER

The uncertainties listed in the special demurrer are such that can be remedied by amendment. As said in *Veterans' Welfare Board* v. *City of Oakland*, 74 Cal.App.2d 818, 822 [169 P.2d 1000], ''it is an abuse of discretion to deny the right to amend if the only sound basis of the order is a defect challenged by special demurrer. In such a case the judgment will be reversed even though one or more grounds of special demurrer may have been good.'' (See *Wennerholm* v. *Stanford Univ. Sch. of Med.*, 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358].)

In *Bell* v. *Krauss*, 169 Cal. 387 [146 P. 874], it was held, in effect, that in an action in equity to set aside an order of adoption, a complaint which sets forth facts which would have been sufficient to justify the setting aside of the order if a timely application had been made under section 473 of the Code of Civil Procedure, states a cause of action against general demurrer.

As said in *Wennerholm* v. *Stanford Univ. Sch. of Med.*, *supra* (20 Cal.2d 713, at p. 720) : ''We therefore hold that it was an abuse of discretion for the trial court to sustain the demurrer without leave to amend. We do not decide, however, that the complaint was not subject to special demurrer, and the trial court may in its discretion require the clarification of uncertainties or ambiguities in the complaint. (*Guilliams* v. *Hollywood Hospital, supra* [18 Cal.2d 97] p. 104 [114 P.2d 1].)''

The judgment is reversed.

Peters, P. J., and Schottky, J. pro tem., concurred.