[Civ. No. 21769. First Dist., Div. Two. Dec. 14, 1964.]

DELL FREDA LENNEFELT, Individually and as Executrix, etc., et al., Plaintiffs and Appellants, v. ALAN CRANSTON, as State Controller, Defendant and Respondent.

Fitzgerald, Abbott & Beardsley and James C. Soper for Plaintiffs and Appellants.

Charles J. Barry, Milton D. Harris and Newell C. Barnett for Defendant and Respondent.

AGEE, J.—In this action in equity to set aside an order fixing inheritance tax upon the ground of extrinsic mistake the trial court found that the mistake was intrinsic rather than extrinsic and denied relief. Plaintiffs appeal from the judgment.

The broad statutory provisions for relief from mistake (Code Civ. Proc., § 473) are not available to plaintiffs in this case because application for such relief was not made within six months after the making of the order. Plaintiffs do not contend otherwise and they also acknowledge that ''equitable relief from a judgment [or order] taken by mistake will be granted only if the mistake is *extrinsic*.''

The facts are not in dispute. Plaintiff Dell Freda Lennefelt is the mother of plaintiffs William H. Goodwin, Jr. and Joseph Sumner Hill. All are legatees under the will of Henry A. Cook, who died on June 26, 1960. Dell is also the executrix.

Dell was born in 1902 and, at the age of one year, was delivered by her natural parents into the custody of Cook and his wife. From then on Cook and Dell continuously stood in the mutually acknowledged relationship of parent and child.

 In her capacity as executrix Dell employed an attorney and an accountant to perform legal and accounting services in connection with the probate proceedings. She advised them of all of the facts regarding the foregoing parent-child relationship and the fact that William and Joseph were her lineal issue.

On December 19, 1960 Dell, as executrix, executed the regular printed form of ''Inheritance Tax Affidavit'' and listed herself and two sons as beneficiaries under the will and stated their relationship to the decedent as being that of niece and grandnephews, respectively. This statement was supplemented as follows: ''The relationship of Dell Freda Lennefelt to the deceased is based upon the fact that the deceased was married to her mother's sister. William H. Goodwin Jr. and Joseph Sumner Hill are each the son of

Dell Freda Lennefelt. Based upon that fact, each would be the grandnephew of the deceased.''

In preparing the foregoing affidavit said accountant and said attorney failed to make known to the inheritance tax appraiser the facts regarding the mutually acknowledged relationship between Cook and Dell. In executing the affidavit, Dell relied upon the advice of said attorney and said accountant that such relationship was not significant to the determination of the inheritance tax.

Acting solely upon the averments contained in Dell's affidavit, the inheritance tax appraiser determined that plaintiffs were strangers in blood to the decedent and that their legacies were taxable at the rates prescribed in the California Revenue and Taxation Code for Class D transferees (§ 13310).

On August 14, 1961 the superior court sitting in probate made its order in accordance with the report of the inheritance tax appraiser and fixed the amount of the inheritance tax on plaintiffs' legacies at $37,552.57. On December 26, 1961, Dell as executrix paid this amount out of the funds of the estate.

In May 1962 Dell was advised by a trust officer of a bank that the legacies of herself and her two sons should possibly have been taxed at the lower rate prescribed for Class A transferees rather than at the rate prescribed for Class D transferees.

On June 27, 1962, after consultation with new counsel, plaintiffs filed this action for a refund of $25,663.79, that amount being the difference between the amount fixed in the order and the amount which would have been chargeable if plaintiffs had been determined to be Class A transferees.

Section 13307 of the Revenue and Taxation Code defines who are Class A transferees and includes the following: ''(c) A transferee to whom the decedent for not less than 10 continuous years prior to the transfer stood in the mutually acknowledged relationship of a parent, if the relationship commenced on or before the transferee's fifteenth birthday. (d) A transferee who is the lineal issue of a child mentioned in subdivision (b) or (c).''

It thus appears that if the facts of which plaintiffs were aware, and which were told by Dell to the attorney and accountant originally employed, had been made known to the inheritance tax appraiser, plaintiffs would have been classified as Class A transferees and the court would have, in accordance therewith, fixed the inheritance tax chargeable

against plaintiffs' legacies at the lower amount indicated above.

■ In discussing the law applicable herein it should be noted preliminarily that an order fixing inheritance tax "has the force and effect of a judgment in a civil action" (Rev. & Tax. Code, § 14672) and that "The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic. [Citations.]" (*Westphal* v. *Westphal*, 20 Cal.2d 393, 397 [126 P.2d 105].)

■ The Supreme Court then defines extrinsic mistake as follows: "Fraud or mistake is extrinsic when it deprives the unsuccessful party of an *opportunity* to present his case to the court." (Italics ours.)

■ In the instant case the plaintiffs were given the opportunity to present to the inheritance tax appraiser, and to have included in his report to the court sitting in probate, all of the facts of which they then had knowledge.

■ In *Greenwood* v. *Greenwood*, 112 Cal.App. 691, 696 [297 P. 589], the court stated: "Equity will not grant relief against a judgment at law, where such judgment was obtained in consequence of the neglect, inattention, mistake, or incompetency of the attorney, unless caused by the opposite party." (Quoted with approval in the recent case of *Preston* v. *Wyoming Pac. Oil Co.*, 197 Cal.App.2d 517, 530 [17 Cal. Rptr. 443].)

The same principle is stated in *De Tray* v. *Chambers*, 112 Cal.App. 697, 699 [297 P. 575], and in *Amestoy Estate Co.* v. *City of Los Angeles*, 5 Cal.App. 273, 277 [90 P. 42].

In the latter case, the court stated: "A different rule obtains when the proceedings are under section 473, Code of Civil Procedure. That section is broad enough to justify the action of the court in relieving a party from a mistake of law upon the part of his attorney when from reliance thereon he was prevented from making a defense. [Citation.] The broad provisions of that section are available, however, only to those seeking relief thereunder. It cannot be construed as an attempt to broaden the powers of a court of equity in determining its jurisdiction in an independent proceeding." The opinion goes on to state that "without which rule there would be no end to litigation and no permanent rights could be established by judgments and decrees."

Under the heading, "The Order Fixing Inheritance Tax

Resulted From Extrinsic Mistake,'' plaintiffs cite four cases in support of their position: *Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317]; *Hallett* v. *Slaughter,* 22 Cal.2d 552 [140 P.2d 3]; *Turner* v. *Allen,* 189 Cal.App.2d 753 [11 Cal.Rptr. 630]; and *Hill* v. *Johnson,* 194 Cal.App.2d 779 [15 Cal.Rptr. 236].

Each of these cases involves a situation where the party seeking relief after the expiration of the six months' period allowed by section 473 of the Code of Civil Procedure was mistaken as to the *fact* which caused the order or judgment in question to be made against him and was thereby deprived of the opportunity to present his cause. None involve a situation where, as in the instant case, the party did not avail himself of the opportunity to present facts *of which he had knowledge* because he was not aware of the legal significance thereof.

In *Bacon* v. *Bacon, supra,* the will was in the handwriting of the testator. It contained a bequest '' 'to the wife of my said son Frank the sum of ten thousand dollars. . . .' '' The plaintiff was at that time the wife of said son Frank. At the first reading of the will, the word ''ten'' was erroneously read as ''two.'' Typewritten copies were made thereafter and sent to the parties interested. These copies contained the same mistake. The original will was filed and was not again carefully read or examined by any person until three years after the estate was distributed. The typewritten copies were used in all of the probate proceedings.

The court commented upon the mistake, as follows: ''Upon a casual reading a person of ordinary skill in deciphering penmanship might easily mistake the word 'ten' . . . for the word 'two'. . . .'' Plaintiff did not discover the mistake until shortly before commencing her action and the court found that she was not guilty of negligence or laches.

It is apparent that in *Bacon,* unlike the instant action, the one seeking equitable relief did not know the *fact,* i.e., that the testator had written out the amount of her bequest as ''ten,'' not ''two.''

In *Hallett* v. *Slaughter, supra,* a default judgment entered against plaintiff in a municipal court action was set aside. The court found on substantial evidence that plaintiff's answer (as a defendant) to the complaint in the municipal court action had been properly and timely deposited in the mail but that it had been lost and not received by the addressees. It further found that plaintiff was prevented from setting up a defense ''by the accidental loss of her answer

and the mistaken belief on her part and on the part of her attorney that the answer was on file, . . ." (p. 555).

The court labeled this "extrinsic accident and mistake of fact." Here, just as in *Bacon*, the aggrieved party did not know the *fact*, i.e., that the answer had been lost and was not on file. We again point out that, in the instant case, the *fact* of Dell's relationship to the decedent was known to the parties seeking relief. Only the legal effect of such fact was unknown to them.

*Turner* v. *Allen, supra,* is another appeal from a decree in equity setting aside a default judgment in a prior action. Turner's attorney in the prior action, in which Turner was a defendant, intended to answer for him as "S. A. Turner, individually and doing business as Samson Electric Car Company." He dictated the answer with that intention but, as it was typed by his secretary, it purported on its face to be an answer by Samson Electric Car Company, Inc., a corporation. The attorney testified at the trial that he did not intend to appear on behalf of the corporation. In any event the error was not noticed and the answer was filed under the mistaken belief that it was Turner's answer. The plaintiff in that action thereafter caused a default judgment to be entered against Turner, individually and doing business as Samson Electric Company.

We say again that this type of case involves a mistake as to a fact, not the legal effect of such fact. The mistake in Turner was that Turner's attorney thought that he had filed an answer for Turner when in fact he had not.

*Hill* v. *Johnson, supra,* is an appeal from an order setting aside a default judgment taken against defendant Taylor. An insurance company had retained the same attorney to represent both Johnson and Taylor. By what the court found to be an "inadvertent mistake," the attorney filed an answer for Johnson but failed to do so for Taylor. Again the mistake was as to a fact, i.e., the attorney's mistaken belief that an answer for Taylor was on file when in fact it was not.

On the other hand, where an attorney knows the facts but mistakenly concludes that they are of no legal significance and does not present them at the hearing of the matter in question, his mistake is intrinsic and not extrinsic.

This rule is well illustrated in *Eistrat* v. *Brush Industrial Lumber Co.*, 147 Cal.App.2d 628 [305 P.2d 715]. There the plaintiff sought to vacate a prior adverse judgment on the

ground that at the trial of the prior action he had requested his attorney to offer in evidence certain facts and the attorney decided against the suggestion. On appeal from a second adverse judgment, the court, quoting from *Westphal* v. *Westphal, supra,* held: "Measured by these principles, it is clear that plaintiff has not alleged facts entitling him to have the prior judgment vacated. There is no showing of extrinsic fraud or mistake within the definition of those terms by our courts. [Citations.]"

Plaintiffs suggest that the form of Inheritance Tax Affidavit contains an "extrinsic factor" in that, below the space wherein the names of the beneficiaries and their "Relationship" to the decedent are to be inserted, there appears the following printed provision: "Relationship must be by blood except in the case of a surviving spouse, son-and/or daughter-in-law; all other beneficiaries who are neither spouse nor blood relatives should be listed as strangers."

There is no evidence that the attorney or the accountant were in any way misled or influenced by this direction. As a matter of fact, they ignored it. Instead of listing the plaintiffs as "strangers," they listed them as niece and grand-nephews, respectively.

In fairness to present counsel, they were under the impression that plaintiffs had been listed as "strangers" in the affidavit as prepared and thus made the point in their brief that "the attorney and accountant who represented the executrix in the probate proceedings complied literally with the above quoted instruction." When the true listing was discovered the error was corrected by letter to us from said present counsel. In this letter it is stated that the handwritten notations of "stranger" and "strangers" were made by the secretary to the inheritance tax appraiser. In any event we find no merit in the point.

Plaintiffs finally contend that, even though the intrinsic mistake of the attorney is imputed to Dell in her capacity as executrix, it is an extrinsic mistake as to her and her sons in their capacities as legatees.

This contention overlooks the relationship between the executrix, the legatees and the attorney in connection with the proceedings leading up to the making of the order appealed from.

The executor or administrator "or any other person having actual knowledge of the facts required" may execute the

"Inheritance Tax Affidavit." (Cal. Admin. Code, tit. 18, Reg. 14501-14515(a), subd. (3).)

██ Thus, while any one of the plaintiffs was authorized by law to execute the affidavit, this was done by plaintiff Dell acting as executrix. In doing so, she acted as the agent of the legatees, one of whom was herself. As stated in *Estate of Bryan*, 99 Cal.App. 113, 116, "As such [executrix] she was the agent of the appellant and of the other heirs under the well-settled rule that the executrix represented the heirs. . . ."

"The theory upon which the inheritance tax is imposed and sustained is that the state which confers the privilege of succeeding to property may attach thereto the condition that a portion of the property shall be contributed to that state." (*Estate of Dillingham*, 196 Cal. 525, 532 [238 P. 367]; *Estate of Tutules*, 204 Cal.App.2d 481, 493 [22 Cal.Rptr. 427].) The state has made the executrix liable for the payment of any tax fixed in the probate proceeding. (Rev. & Tax. Code, § 14101.) However, the estate itself has no need of representation in such proceeding, since "inheritance taxes are not charges upon the estate of a decedent, nor are such taxes considered as expenses of administration." (*Kelso* v. *Sargent*, 11 Cal.App.2d 170, 177 [54 P.2d 26].) It would thus appear clear that the executrix was acting as the agent of the legatees, who were the real parties in interest in connection with the tax proceeding.

██ In this situation, the attorney selected by the executrix was acting as the subagent of the legatees for the purpose of preparing and advising the executrix in connection with the execution of the "Inheritance Tax Affidavit."

No question is raised as to the authority of the executrix to appoint said attorney to act in such capacity. "A subagent, lawfully appointed, represents the principal in like manner with the original agent; . . ." (Civ. Code, § 2351).

We hold that the attorney was acting within the course and scope of his subagency when he made the mistake in question and that such mistake is imputed to and becomes in law the mistake of the legatees as principals. ██ We further hold that such mistake is intrinsic rather than extrinsic.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.