[Civ. No. 35532. Second Dist., Div. Three. July 30, 1970.]

WESTINGHOUSE CREDIT CORPORATION,
Plaintiff and Respondent, v.
ROBERTA H. WOLFER, Defendant and Appellant.

64

## COUNSEL

Aitken & Bradshaw and John G. Bradshaw for Defendant and Appellant.

Swerdlow, Glikbarg & Shimer, Allan Albala and Joel Behr for Plaintiff and Respondent.

## Opinion

**COBEY, Acting P. J.**—Roberta H. Wolfer appeals from a minute order denying her motion to vacate her default[1] and the judgment entered thereon and for relief incidental thereto. ■ The appeal lies (Code Civ. Proc., § 904.1, subd. (b)), but we affirm for reasons which we will now set forth.

### The Facts

In January 1966 Westinghouse acquired, by written assignment for valuable consideration, all of the seller's interest under a written agreement covering the sale of certain restaurant equipment and related items to one Griffin. About six months later appellant assumed by a written assumption agreement all of Griffin's obligations to Westinghouse under the agreement of sale. A short time later one Savoy apparently took over the restaurant where the equipment and other items involved were in use, and assumed by written agreement with appellant and Griffin alone their debt to Westinghouse for these items. Shortly thereafter Westinghouse apparently learned of this assumption. The monthly payments to Westinghouse, however, almost immediately stopped.

On March 28, 1968, Westinghouse filed suit against Griffin, appellant and Savoy for the balance then due under the agreement of sale, namely, $13,081.18, and for other relief. About a month later the summons and the complaint in this action were duly served upon appellant and Savoy. Appellant thereupon delivered the summons and complaint she had received to an attorney, Endres, who apparently advised her that the matter would be taken care of. Endres, who was also Savoy's attorney, and Albala, Westinghouse's attorney, then negotiated a proposed settlement of the litigation under which, among other things, the monthly payments provided by the agreement of sale would be reduced to $175 and the period for the making of them thereby impliedly extended. Savoy accepted the settlement, executed a conditional stipulation for judgment, and made the payment of money to Westinghouse then required by the settlement.

Appellant, on the other hand, refused the settlement, which had been offered jointly to her and Savoy, and disclaimed any liability to Westinghouse. Westinghouse rejected the disclaimer and notified Endres orally and in writing that unless appellant appeared by July 5, 1968, Westinghouse

---

[1]This motion was not made under Code of Civil Procedure section 473 because her default had been entered over six months before she gave notice of her motion. (See Code Civ. Proc., § § 473, 1005.5; *Berilla* v. *Pope,* 94 Cal.App.2d 743, 744 [211 P.2d 639]; *Title Insurance etc. Co.* v. *King etc. Co.,* 162 Cal. 44, 45-46 [120 P. 1066].)

would have her default entered. Appellant thereafter failed to appear in the action and her default was entered on August 19, 1968.

With the exception of one payment in June 1968, Westinghouse did not receive any of the reduced monthly payments. Consequently in February 1969 Westinghouse had the stipulated judgment against Savoy entered in the full principal amount for which suit had been brought, $13,081.18, and in May 1969 took judgment after default against appellant in the principal amount of $9,886.80. The following month a writ of execution issued on this judgment and a levy was made upon appellant's deposit of $1,344.06 and her safe deposit box at a certain bank. Appellant thereupon moved to set aside her default and the judgment taken thereon, and for incidental relief.

DISCUSSION

A motion to vacate a default judgment poses the fundamental issue of accommodation between the policy favoring the finality of judgments, on the one hand, and the policy favoring judicial determinations by a hearing on the merits, on the other hand.

Appellant asks that the default judgment against her be set aside because she was deprived of the opportunity to present a meritorious defense to Westinghouse's suit against her through an extrinsic mistake on the part of her attorney, Endres. Specifically she claims that when Savoy promised her that he would pay the debt to Westinghouse for the restaurant equipment and related items, he became as between them the principal on her obligation to Westinghouse and she became the surety; that once Westinghouse learned of this relationship it was obligated to recognize it and act accordingly; that Westinghouse failed to do this when it granted to Savoy, without appellant's consent, as a part of its settlement of the suit with Savoy an extension of time in which to make the monthly payments due to Westinghouse on the items sold; and that under Civil Code section 2819 this conduct by Westinghouse exonerated her from her debt to Westinghouse.

█ We believe that appellant did have a meritorious defense to Westinghouse's suit against her. A surety is, among other things, one who promises to answer for the debt of another. (Civ. Code, § 2787.) █ In a suretyship relation there are two obligors and one obligee who is entitled to but one performance. (See Rest., Security (1941) § 82, p. 228; *Everts v. Matteson,* 21 Cal.2d 437, 447 [132 P.2d 476].) When Savoy assumed appellant's debt to Westinghouse, he became the principal obligor and she

became the surety.[2] (See Rest., Security (1941) § 83(c), p. 239, com. e, p. 243; *Everts* v. *Matteson, supra,* at p. 447.) ▮ As soon as Westinghouse learned of the assumption by Savoy of appellant's debt to Westinghouse, Westinghouse was required to recognize the relation of suretyship between Savoy and appellant and respect it in all of its subsequent dealings with them.[3] (*Everts* v. *Matteson, supra,* at pp. 447-448; Rest., Security (1941) § 83, com. (e), p. 243, § 114, com. (a), pp. 299-300.) This it did not do. Instead, without appellant's consent and without any reservation of its rights against appellant, it extended Savoy's time for payment and thereby exonerated appellant from the debt.[4] (See Civ. Code, § 2819; Rest., Security (1941) § 129(1), p. 346; *Wise* v. *Clapper,* 257 Cal.App.2d 770, 774 [65 Cal.Rptr. 231].)

▮ Her possession of at least one meritorious defense to Westinghouse's suit against her did not in itself, however, entitle her, without more, to the extraordinary equitable relief she sought of setting aside a final judgment. (See 3 Witkin, Cal. Procedure (1954) p. 2120 et seq.) She based her right to this relief on her claim that she had been denied a fair opportunity to present this defense by the total failure of her counsel, Endres, to represent her in the litigation in two respects. First, he represented Savoy as well as herself, and by reason of their different legal positions in the transaction at issue there was a conflict of interest between them. Second, according to her own declaration, at no time prior to the levy upon her property had Endres advised her "that it would be necessary for her to obtain advice of other counsel or that a default or judgment had been entered against her."[5]

▮ Appellant's contention that her default was occasioned by Endres' total failure to represent her is untenable. As we have already indicated, appellant did not acquire a meritorious defense to Westinghouse's suit against her until Westinghouse settled its suit with Savoy alone. From that

---

[2]In this discussion we are ignoring Griffin because Westinghouse's suit against him was dismissed without prejudice.

[3]In this situation the creditor's obligation to recognize the suretyship relation existing between two co-obligors is created by operation of law rather than by contract. Therefore, the creditor's consent to the relationship is unnecessary. (See Simpson on Suretyship (1950) § 18, pp. 31-33; 72 C.J.S., Principal and Surety, § 40, p. 532; 50 Am.Jur., Suretyship, § 11, pp. 910-911.)

[4]This extension was for a definite period of time, but its exact duration is not disclosed in the record.

Since appellant did have this one meritorious defense to Westinghouse's suit under Civil Code section 2819, we will not consider the merit of her other claimed defense of novation.

[5]Appellant also claimed that Endres never told her that she had any liability in the matter. But his informing her of the proposed negotiated settlement to the contrary indicates otherwise.

point on, for all practical purposes, Endres represented only appellant. Therefore, any claim of misconduct on Endres' part in jointly representing appellant and Savoy prior to that time is beside the point. Furthermore, because he did at this point represent her alone, it was unnecessary for him to advise her to obtain other counsel.

■ Additionally, we note that her personal declaration is completely silent regarding what actually occurred between Endres and herself following her rejection of the settlement. Consequently, we do not know whether he advised her that Westinghouse had notified him that it was going to take a default against her,[6] what communications, if any, occurred between Endres and herself at this time, and when his representation of her terminated, if it did. Since she charged him with a total failure to represent her and since the facts to which we have just alluded were entirely within her knowledge, it must be presumed that they were adverse to her or otherwise she would have included them in her declaration. (See Evid. Code, § 413; Witkin, Cal. Evidence (2d ed. 1966) § 1128, pp. 1043-1044.) In short, in these proceedings she did not prove her charge against Endres of a total failure to represent her and on this basis alone the trial court was quite justified in denying her motion.

Finally, appellant failed to allege in her notice of motion or in any of her supporting papers that her default was occasioned by Endres' failure to advise her that she had a meritorious defense. To say the very least, there is a serious question as to whether such a mistake of law by Endres, if it occurred, would constitute in equity a sufficient ground for setting aside a final judgment. ■ The mistake involved would be one of law rather than one of fact. It would appear to be intrinsic rather than extrinsic. (*Lennefelt* v. *Cranston,* 231 Cal.App.2d 171, 176-177 [41 Cal.Rptr. 598].) Under the Restatement of Judgments (1942) section 126(e), page 611, such a mistake of law by the attorney for the complainant would not be a basis for the relief sought. In California, however, we have evolved the rule that where a defendant's failure to appear in an action is caused by a mistake of fact made by his counsel (see *Hallett* v. *Slaughter,* 22 Cal.2d 552, 554-555, 556-557 [140 P.2d 3] (answer presumably lost in the mails); *Turner* v. *Allen,* 189 Cal.App.2d 753, 755-757, 759-760 [11 Cal.Rptr. 630], hg. den. (counsel inadvertently omitted to answer for defendant in two capacities)), or by his total failure to represent his client (see *Orange Empire Nat. Bank* v. *Kirk,* 259 Cal.App.2d 347, 350-354 [66 Cal.Rptr.

---

[6]Relief under Code of Civil Procedure section 473 has been denied to applicants whose showing was limited to the facts that they had retained an attorney to represent them and that thereafter their default and a judgment based thereon were entered without their knowledge. (*United States* v. *Duesdieker,* 118 Cal.App. 723, 725 [5 P.2d 916].)

240]; cf. *Daley* v. *County of Butte,* 227 Cal.App.2d 380, 391-392 [38 Cal.Rptr. 693]), equitable relief may be had. On the other hand, mistaken legal advice from one's own counsel has been held not to be an extrinsic mistake justifying the setting aside in equity of a final judgment. (See *Lennefelt* v. *Cranston,* 231 Cal.App.2d 171, 175-177 [41 Cal.Rptr. 598]; *Amestoy Estate Co.* v. *City of Los Angeles,* 5 Cal.App. 273, 276-277 [90 P. 42].)

The order denying appellant's motion is affirmed.

Schweitzer, J., and Allport, J., concurred.