[Civ. No. 44213. First Dist., Div. Three. June 21, 1979.]

In re the Marriage of HELEN and VINCENT PAUL GUARDINO.
VINCENT PAUL GUARDINO, Respondent, v.
HELEN GUARDINO, Appellant.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Jamie Jacobs-May, Deputy Attorneys General, for Appellant.

Cartwright, Sucherman, Slobodin & Fowler, Robert E. Cartwright, Lowell H. Sucherman and Ralph Leon Isaacs for Respondent.

**OPINION**

**WHITE, P. J.**—This is an appeal from a judgment of the San Francisco Superior Court setting aside portions of the interlocutory and final judgments of dissolution of the marriage of Helen and Vincent Guardino. Vincent, the petitioner below and respondent here, successfully moved to set aside those portions of the judgments of dissolution which declared that Vincent Paul Guardino III was issue of the marriage of Helen and Vincent Guardino and directing Vincent to pay child support. Vincent's motion, which was made after the time for other means of attack had passed, was based on allegations of fraud.

The relevant history of this appeal goes back to the summer of 1972 when appellant Helen Guardino, represented here by the Attorney General of California, was married to her first husband, Steven Quinones. Helen was 22 at the time and the mother of three children by her husband, Steve. In July 1972 Helen met petitioner and respondent, Vincent Paul Guardino, who was 19. Helen and Vincent began having sexual relations in August and continued to see each other, and apparently to have sex, until December of that year. Steve Quinones was served with a petition for dissolution of marriage on November 15, the interlocutory judgment of dissolution was filed March 9, 1973, and the final judgment entered on June 18, 1973. On May 24, 1973, Helen gave birth to a son, whom she named Vincent Paul Guardino III, "Paul," whose birth certificate named Vincent Paul Guardino as father. The paternity of the child, who was born two months prematurely, is the underlying issue of this action.

Helen and Vincent were married on February 14, 1974, some nine months after the birth of the child. On July 1, 1974, Vincent filed a

verified petition for dissolution of marriage and listed Paul as an issue of the marriage. He also signed a declaration of child custody dated June 24, 1974, declaring under penalty of perjury that the child was his son. On January 29, 1975, the default interlocutory judgment of dissolution was filed, providing that custody of the child was given to Helen and ordering Vincent to pay $125 a month child support. The final judgment, which incorporated all of the provisions of the interlocutory judgment, was entered on September 29, 1975.

On May 14, 1976, an order of referral pursuant to Civil Code section 4702 was filed. Vincent was ordered to make the child support payments provided for in the dissolution decree to the probation department, and the San Francisco District Attorney was ordered to appear on behalf of the child, Paul, for whom the support had been ordered, or on behalf of Helen in any proceeding to enforce the orders.

Vincent filed a motion to set aside those portions of the interlocutory judgment which determined the paternity of Paul and which provided for child support. The supporting declaration of Vincent and accompanying points and authorities charged fraud. Helen's declaration and points and authorities in opposition were filed by the San Francisco District Attorney's office. Subsequently, on behalf of Helen, private counsel filed points and authorities in opposition to Vincent's supplemental declaration in support of his motion.

Vincent alleged that he was neither the natural nor the legal father of Paul, that the child was born while Helen was married to Steve, that Vincent was identified as the father on the child's birth certificate without Vincent's knowledge and consent, that Helen tricked, deceived and lied to him that he was the father of the child in order to obtain support money and care, that the attorney to whom Helen referred Vincent at the time of the dissolution was negligent in that he failed to inquire into the circumstances surrounding the birth of the child and to inform Vincent of the conclusive presumption under California law that the child was issue of the marriage of Helen and Steve. In his supplemental declaration, Vincent alleged that by reason of the false, misleading and fraudulent representations of Helen he mistakenly set forth in his petition for dissolution of marriage and stated to the court in that action that Paul was the issue of his marriage to Helen.

Helen in opposition alleged that Vincent was the father of Paul, that she had ceased to cohabit with her husband Steve after the entry of the

interlocutory dissolution decree of March 9, 1973, that she had sexual intercourse only with Vincent from June 1972 until March 1974, that Vincent had insisted that he be listed as the child's father on the birth certificate, that he represented himself as the father of the child at the hospital at the time of birth and at the home of friends and relatives, and that he became angry when informed that Steve was the legal father of the child.

The district attorney was not allowed to participate in the hearings on the motion. Overruling objections thereto, the trial court made findings of fact and conclusions of law and adjudged in conformity with its earlier proposed intended decision that Vincent's motion should be granted, and that he was not the father of Paul.

The district attorney's office filed a timely appeal. Vincent made a motion to dismiss the appeal which was denied by this court.

On behalf of Helen, the Attorney General contends, and we agree, that the trial court abused its discretion by striking the contested provisions from the interlocutory and final judgments of dissolution because the allegations of respondent do not constitute fraud of a character sufficient to set aside a judgment. The Attorney General also argues that the conclusive presumption of paternity does not apply to the instant situation and that the court's order preventing the district attorney from participating in the hearing denied the child and the state due process of law. We agree and reverse the judgment.

## DISCUSSION

### 1. *The Standing of the District Attorney and Attorney General.*

The May 14, 1976, order of referral under section 4702 of the Civil Code required Vincent to make child support payments directly to the probation department. Included in the order was the directive that the district attorney appear on behalf of the minor child and on behalf of the respondent, Helen, in any proceeding to enforce these orders. At the hearing on Vincent's motion to set aside the portions of the interlocutory agreement pertaining to the child's paternity and support, the trial court held that the only issue before the court was the paternity of the child, and that the district attorney had no interest in the case until that question was determined. On that basis, the district attorney was not allowed to participate in the hearing and Helen was represented by

private counsel. On appeal, the Attorney General claims that this denied the child and the State of California due process of law. Basic to the claim raised by the Attorney General is the question of whether the district attorney below, and the Attorney General here are proper parties.

Clearly under Civil Code section 4702[1] and pursuant to the trial court's own order, the district attorney was empowered to appear on behalf of the child and his mother in any proceeding to enforce the support order. Although the proceeding on the issue of fraud from which the appeal was taken was not expressly concerned with enforcement of the support order, the outcome had a direct effect on that enforcement. The district attorney, as a representative of both the state and of the minor child and his mother as provided by statute, therefore, should have been allowed to participate in the proceedings.

Welfare and Institutions Code section 11475.1 supports this position. That section directs the district attorney to enforce the obligation of parents to support their children by appropriate civil or criminal action where the child is receiving public assistance, and where the child is not receiving public assistance, when requested to do so by the individual on whose behalf the enforcement efforts will be made, and also to determine the paternity of children born out of wedlock.

Even if the issue of paternity is unsettled, regardless of whether or not the child was born out of wedlock, under this section the district attorney has standing to appear in his representative capacity on behalf of the state

---

[1]Civil Code section 4702 reads: "(a) Notwithstanding the provisions of Section 4701, in any proceeding where a court makes or has made an order requiring payment of child support to a parent receiving welfare moneys for the maintenance of minor children, the court shall direct that payments of support be made to the county clerk, probation officer, or other officer of the court or county officer designated by the court for such purpose, and shall direct the district attorney to appear on behalf of such welfare recipient in any proceeding to enforce such order.

"(b) In any proceeding where a court makes or has made an order requiring payment of child support to the person having custody of any minor children of the marriage, the court may direct that payments thereof be made to the county clerk, probation officer, or other officer of the court or county officer designated by the court for such purpose, and may direct the district attorney to appear on behalf of such minor children in any action to enforce such order. The court shall include in its order any service charge imposed under the authority of Section 580.5 of the Welfare and Institutions Code.

"(c) Expenses of the county clerk, probation officer, or other officer of the court or county officer designated by the court, and expenses of the district attorney incurred in the enforcement of any order of the type described in subdivision (a) or (b), shall be a charge upon the county where the proceedings are pending. Any fees for service of process in the enforcement of any such order shall be a charge upon the county where the process is served."

and the minor and his mother. It is clear that in most cases, until the paternity question is determined, the directive to enforce the parental support obligation cannot be carried out.

As required by Welfare and Institutions Code section 11477, Helen had assigned to the state (county) all of her rights to receive accrued and future support from Vincent on behalf of the child as a condition of eligibility for public assistance. Helen and the state were thus in the relationship of assignor-assignee. On this basis alone, we hold that the district attorney should have been allowed to participate in the proceeding which ultimately could and did set aside the judgment granting the right to receive support from Vincent. (See *In re Marriage of Shore* (1977) 71 Cal.App.3d 290 [139 Cal.Rptr. 349].)

Vincent claims that because the state was not a party to the proceeding in the trial court and the district attorney failed to become a party to the record by some means such as a motion to vacate, that the state has lost its right to appeal. We disagree. The role of the state as the statutory representative of Helen and the child gives it sufficient interest to entitle it to appeal. In *Guardianship of Copsey* (1936) 7 Cal.2d 199 [60 P.2d 121], the guardian of an incompetent war veteran filed an account, which the court approved, allowing large sums of money for attorney's fees. The federal Administrator of Veterans' Affairs, who had not previously appeared, took an appeal. The Supreme Court held that the ward was aggrieved and the administrator, under federal law, was a representative of the ward with sufficient interest in the estate to entitle him to appeal. The rule in *Copsey* allows the appeal by the state in the case at hand, particularly in view of the policy to resolve doubts in favor of the right to appeal whenever the substantial interests of a party are affected by a judgment. (*Koehn* v. *State Board of Equalization* (1958) 50 Cal.2d 432, 435 [326 P.2d 502].)

2. *Abuse of Discretion.*

A judgment may be attacked in four ways: by a motion for a new trial, by appeal, by motion for relief pursuant to Code of Civil Procedure section 473, or by an independent suit in equity. (*Adamson* v. *Adamson* (1962) 209 Cal.App.2d 492, 500 [26 Cal.Rptr. 236].) In the instant case, Vincent's motion was filed long after the time for ordinary direct attack, as well as after the six-month period under Code of Civil Procedure section 473 had passed. The trial court then had jurisdiction to entertain the motion only as an independent suit in equity. A motion is a proper

means of raising grounds for equitable relief where, as here, the court that rendered the judgment attacked possesses a general jurisdiction in law and equity. (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575-576 [122 P.2d 564, 140 A.L.R. 1328].) The motion is addressed to the sound discretion of the trial court and in the absence of a clear showing of abuse of discretion, the order of the court will not be disturbed on appeal. (*Cope* v. *Cope* (1964) 230 Cal.App.2d 218, 231 [40 Cal.Rptr. 917].)

██ When a judgment is obtained or entered through fraud, mistake or accident, and there has been no negligence, laches or other fault on the part of the aggrieved party, or on the part of his agents, then a court of equity will interfere and restrain proceedings on the judgment which cannot be conscientiously enforced. " 'The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law.' " (*Olivera* v. *Grace, supra,* 19 Cal.2d 570, 575.) ██ The major issue before us, then, is whether it was an abuse of discretion for the trial court to find that Vincent had been deprived of a fair adversary trial at law.

Initially, it is clear that in the instant case it is only on the ground of fraud that the interlocutory and final judgments of dissolution can be set aside in whole or in part. ██ Interlocutory dissolution decrees are res judicata as to all questions determined therein. (*Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368]; *Adamson* v. *Adamson, supra,* 209 Cal.App.2d 492, 501.) Reservation by the trial court of jurisdiction for purposes of modifying child custody or support or spousal support does not change the conclusive character of the adjudication with respect to all other issues. Thus, in *Adamson,* the wife who secured an interlocutory judgment of divorce by default pursuant to a complaint in which she alleged that there were no children of the marriage was prevented from modifying the judgment to declare that there were two children of the marriage on the grounds of res judicata. The Court of Appeal held that the trial court had no jurisdiction to retry an issue finally determined in the divorce action, and noted that although the wife labeled the petition as one for modification, she in fact sought a retrial of an issue finally determined in the prior proceeding. (209 Cal.App.2d at p. 502.)

Similarly, in *Adoption of Bonner* (1968) 260 Cal.App.2d 17 [66 Cal.Rptr. 812], the court held that husband was estopped from contesting in a subsequent adoption proceeding the parentage of a child claimed to be the issue of the marriage of husband and wife in their divorce action. There the court said, "The judgment in the divorce action between

petitioner Harry Bonner and objector Mildred Bonner adjudicated as between themselves the parental relationship of those parties to the child Laura, and under the doctrine of collateral estoppel that adjudication is binding upon both parties to the divorce. [Citations.] Neither Harry nor Mildred Bonner can relitigate the question of Laura's parentage, and Harry is estopped to show in this proceeding that Mildred is not the child's natural mother." (260 Cal.App.2d at p. 20.)

In *Garcia* v. *Garcia* (1957) 148 Cal.App.2d 147 [306 P.2d 80], husband and wife entered into a property settlement agreement approved in and made part of the interlocutory divorce decree whereby husband acknowledged that he was the father of the child Richard and agreed to pay a certain sum for his support. Husband was later ordered before the court for contempt proceedings for failure to make delinquent payments for child support, and several months later filed an action against wife and the child under then section 231 of the Civil Code to declare that he was not the father of the child. The wife and child demurred to the complaint on the basis of res judicata and moved to dismiss the complaint. The trial court found that the divorce action had adjudicated the question of the child's parentage and operated as res judicata on that issue. The Court of Appeal affirmed, saying, "Even though a second suit is on a different cause of action, a right, question, or fact once determined must be taken as conclusively established so long as the judgment in the first action remains unmodified. . . . It has been declared that even where the causes of action were different, the prior determination of a litigated issue is conclusive in a subsequent suit not only as to the issue itself but also as to every matter that might have been urged for or against that issue in its determination." (*Garcia* v. *Garcia, supra,* at pp. 153-154.)

However, a judgment is not entitled to the usual conclusive effect and equitable relief is allowed long after the time for appeal, new trial or other statutory means of review has expired if the judgment was obtained under circumstances of fraud or mistake which prevent a fair adversary hearing, and the aggrieved party does not have a reasonable opportunity to litigate his claim or defense. (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 175, pp. 3744-3745.) Courts distinguish between extrinsic and intrinsic fraud, and the general rule is that only extrinsic fraud provides a basis for equitable relief. Ordinarily if the aggrieved party is aware of the proceeding and is not prevented from appearing, any fraud is intrinsic and not a basis for equitable relief. This rule is sometimes relaxed where, by fraud, the aggrieved party's claim or defense is concealed from him. (5 Witkin, Cal. Procedure, *supra,* § 185,

p. 3754; *Granzella* v. *Jargoyhen* (1974) 43 Cal.App.3d 551, 556 [117 Cal.Rptr. 710, 84 A.L.R.3d 1113].) If Vincent had a basis for equitable relief, it was clearly only on this latter ground.

As Vincent points out in his brief, the distinctions between extrinsic and intrinsic fraud are hopelessly blurred. Nonetheless, the California courts have remained married to the importance of the distinction whether or not it in fact exists. In *Kulchar* v. *Kulchar, supra,* 1 Cal.3d 467, 473, the court explained the difference thusly: "Whether the case involves intrinsic or extrinsic fraud or mistake is not determined abstractly. 'It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case.' (*Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13 at p. 19.)"

 Vincent claims that at the time of the dissolution his claim that he was not the father of Paul was effectively concealed from him because Helen fraudulently led him to believe that *legally* he was the father of the child. Vincent testified that he allowed the interlocutory decree to state he was the child's father because after their marriage Helen had said to him, " 'Now you are the legal father of this child. He has your name, and you are married to me. That makes you the legal father.' " It would appear that under the *Kulchar* test, Vincent did not present sufficient basis for equitable relief. In view of the fact that the dissolution decree was obtained on the basis of his perjured testimony, as he now alleges, this is particularly true. A judgment will not be set aside because of perjured evidence, ". . . and particularly so where the perjury involved is that of the petitioner. The rule is the same whether there was a default judgment or a judgment after a contested trial. [Citations.]

" . . . . . . . . . . . . . . . . . .

"To approve the contention of [Vincent] . . . we would necessarily be compelled . . . , to give tacit approval to the use of perjury and tactics not designed to the proper administration of justice. . . ." (*Adamson* v. *Adamson, supra,* 209 Cal.App.2d at pp. 500-501.) And in *Kulchar* the court said, "Relief is also denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained. [Citations.] 'If the complainant was guilty of negligence in

permitting the fraud to be practiced or the mistake to occur equity will deny relief.' [Citation.]" (1 Cal.3d at p. 473.)

In *Kulchar,* husband and wife, as part of a dissolution proceeding had agreed that husband would pay any tax owed by either of the parties prior to a certain date, and the agreement was incorporated into the interlocutory decree of divorce. Following the divorce proceedings, wife received a tax assessment of approximately $22,000 for federal income taxes based on a theretofore undisclosed income accumulated during the marriage by a New Zealand corporation in plaintiff's name. In the trial court, husband successfully moved to modify the divorce decree to relieve him of any liability for taxes on the New Zealand income on the grounds of extrinsic fraud and extrinsic mistake. The trial court struck the tax provision from the decree because of the mutual mistake of the parties. The Supreme Court reversed on the ground that the husband had simply failed to assemble all of his evidence at the trial. Husband had known of wife's New Zealand holdings prior to the divorce and had known that they were sizable. At some time prior to the divorce, in connection with the preparation of income tax returns, husband's attorney had been advised by wife that her New Zealand income was not taxable according to the advice of a certain law firm known to the attorney. Both parties testified that the tax provision was included in the decree because of an audit being conducted by the Internal Revenue Service with respect to an unrelated transaction by husband. The court said: "In the present case both parties knew of the New Zealand assets, but the husband and his attorney chose not to investigate their taxability. The property settlement agreement expressly covered unknown tax liability. Having had full opportunity to consider all income of the wife and its concurrent tax consequences, the husband cannot now complain of the added tax burden." (1 Cal.3d at p. 474.)

Vincent attempts to distinguish *Kulchar* on the grounds that (1) the trial court in the instant case reserved jurisdiction, and (2) the *Kulchar* court reversed because extrinsic mistake, not extrinsic fraud, was insufficient cause to upset the divorce decree.

As discussed above, the fact that the trial court reserved jurisdiction to modify child custody or support does not change the conclusive character of the adjudication and the decree is res judicata with respect to the child's parentage. *Kulchar* is not distinguishable on that basis.

Neither can *Kulchar* be distinguished because the court there reversed the trial court's finding of mutual mistake. The Supreme Court directed its discussion to the allegations of extrinsic fraud and extrinsic mistake which husband had made in his initial motion. The trial court was reversed because on neither ground presented by husband was there sufficient basis for equitable relief, and the mutual mistake on which the trial court based its decision was not sufficient to set aside a final judgment.

■ The factual situation in *Kulchar* closely parallels that of the instant case. The husband in *Kulchar* was aware of the fact that wife had extensive income producing holdings in New Zealand but was misinformed regarding the tax consequences of that income. Wife was at least the channel if not the source of this misinformation, whether unwitting or not. In the case before us, Vincent was aware that Helen was married to another man when she became pregnant with Paul and, if Vincent's allegations are believed, that she was having sexual relations with both her husband and Vincent during the conception period. Vincent was also aware that the child was nine months old when Helen and he married. Vincent's claim that he was misinformed regarding the legal status of the child, regardless of Helen's motivation, and that he chose not to pursue the matter at the time of the dissolution because of that misinformation would not appear to be substantially different in character than that of the husband in *Kulchar*. The court said there, "The principles of res judicata demand that the parties present their entire case in one proceeding. 'Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts. A rule which would permit the re-opening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of the rules of res judicata.' (Rest., Judgments, § 126, com. a.)" (1 Cal.3d at p. 472.)

In *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13 [193 P.2d 728], wife sought to set aside provisions of the interlocutory decree of divorce relating to a property settlement agreement on the ground that husband fraudulently led her to believe that certain assets were his separate property when in fact they were community property. The Supreme Court affirmed the trial court's denial of wife's claim on the basis that equitable relief should be denied where a party seeks to relitigate an issue involved in a former proceeding on the ground that allegations of proof of either party were fraudulent or based on mistake. (32 Cal.2d at p. 18.) The court said that wife was "barred from obtaining equitable relief by

her admission that she and her attorney did not investigate the facts, choosing instead to rely on the statements of the husband as to what part of the disclosed property was community property." (32 Cal.2d at p. 23.) As does *Kulchar*, *Jorgensen* presents a factual situation analogous to the instant case, where the complaining party seeks to base a claim of extrinsic fraud on a mistaken understanding of the legal implications of a known factual situation. As in *Kulchar* and *Jorgensen*, the instant claim should have been denied.

*Arnold* v. *Howell* (1950) 98 Cal.App.2d 202 [219 P.2d 854], is the case most favorable to Vincent's claim, but it is clearly distinguishable. In *Arnold*, a father was led to give his consent to the adoption of his daughter by her aunt and uncle by their fraudulent representations that it was necessary to protect the child, was only a temporary measure, and that she would be returned to her father's custody when he returned from his overseas naval service. The father sought to overturn the adoption, alleging that he had consented to the adoption when under great emotional and mental distress due to the death of his wife, his imminent shipment overseas to a war zone in which heavy casualties were being sustained, the insinuations of the child's grandparents and aunt and uncle that he would be killed, and his concern for the child's welfare. The court discussed the fact that consent to adoption is considered a jurisdictional prerequisite so that generally courts will set aside adoptions where consent is obtained through fraud and duress. It found that the father's allegations that he had been specifically promised he would regain custody of his daughter when he returned from overseas constituted the type of fraud which a court of equitable powers may consider.

The holding of the *Arnold* court is based on the issue of consent and the elements of duress and fraud which led to it. There was no issue of consent in the instant case. In *Arnold*, the father was the victim of factual misrepresentations, whereas in the instant case, Vincent was allegedly misled by misrepresentation of a legal status. ▮▮▮ Cases which grant equitable relief from final judgments are without exception those in which the aggrieved party or the court has been the victim of factual misrepresentations. (See 6 Witkin, Summary of Cal. Law (8th ed. 1974) Husband and Wife, § 121, p. 4991; 5 Witkin, Cal. Procedure, *supra*, Attack on Judgment in Trial Court, §§ 185-186, pp. 3754-3757.)

▮▮▮ From the above discussion it is clear that the trial court abused its discretion in setting aside the contested portions of the judgment of dissolution. In its findings of fact, the court stated that Vincent was

tricked and deceived into believing that he was the father of Paul and conned by false, fraudulent and misleading representations that he was the legal father. According to Vincent's testimony, however, he never believed that he was the natural father of the child and this fact was the cause of violent arguments between Helen and him. He testified that members of his family questioned the paternity of the child. There can be no question that under Vincent's version of the facts, he was always aware of an uncertainty regarding the child's paternity.

When Vincent and Helen were married and she informed him that he was then the legal father of Paul, he, according to his testimony, accepted Helen's representation because he wanted to do everything he could to make the marriage work. Obviously this motivation was no longer present when Vincent filed the petition for dissolution of the marriage, and yet he inexplicably continued to accept the responsibility of fatherhood.

The trial court found that Vincent's attorney in the dissolution proceeding failed to inquire into the circumstances surrounding the birth of the child and to inform his client that under California law Paul was conclusively presumed to be issue of the marriage of Helen and Steve. In fact, the bulk of the evidence regarding Vincent's conversations with his attorney was mistakenly excluded as hearsay and although there was sufficient basis from which the court could infer that Vincent's attorney was negligent for not inquiring into the question of the child's paternity, this in itself is not a proper ground to set aside a judgment. ▉ " 'Equity will not grant relief against a judgment at law, where such judgment was obtained in consequence of the neglect, inattention, mistake or incompetency of the attorney, unless caused by the opposite party.' " (*Lennefelt* v. *Cranston* (1964) 231 Cal.App.2d 171, 175 [41 Cal.Rptr. 598].) Although Vincent claims that Helen misled the attorney, pointing to the private, forty-five minute discussion between the two, according to Vincent's testimony he told the attorney on more than one occasion that Paul was not an issue of the marriage. The court in *Lennefelt* discusses at length the difference between a factual and a legal misrepresentation and the fact that only the former provides grounds for setting aside a judgment. "[W]here an attorney knows the facts but mistakenly concludes that they are of no legal significance and does not present them at the hearing of the matter in question, his mistake is intrinsic and not extrinsic." (231 Cal.App.2d at p. 177.) The distinction between mistake of law and mistake of fact has been affirmed in the more recent case, *Westinghouse Credit Corp.* v. *Wolfer* (1970) 10 Cal.App.3d 63, 70 [88 Cal.Rptr. 654], where the court said, "[M]istaken legal advice from one's

own counsel has been held not to be an extrinsic mistake justifying the setting aside in equity of a final judgment."

3. *The Effect of Evidence Code Section 621.*

■ Evidence Code section 621 provides that the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage. Assuming that Steve was cohabiting with Helen at the time of the child Paul's birth and that this fact had been introduced at the dissolution proceeding, the conclusive presumption would have determined the issue of Paul's paternity. A presumption, however, is not evidence, but an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. (Evid. Code, § 600.) Because the issue of Paul's paternity never arose during the dissolution proceeding and the underlying facts surrounding the circumstances of his birth were never established, the presumption was not brought into play. At this point the issue of paternity is res judicata, and the presumption, conclusive or not, has no effect.

The judgment is reversed.

Feinberg, J., and Halvonik, J., concurred.

A petition for a rehearing was denied July 20, 1979, and respondent's petition for a hearing by the Supreme Court was denied August 15, 1979.