[Civ. No. 7847. Second Appellate District, Division One.—June 8, 1934.]

RIO GRANDE OIL COMPANY (a Corporation), Respondent, v. SEABOARD SURETY CORPORATION OF AMERICA (a Corporation), Appellant.

Edgar H. Craddock and Arthur T. Stollmack for Appellant.

H. L. Dunnigan and T. P. Hogan for Respondent.

CONREY, P. J.—In an action against Eureka Petroleum Corporation, plaintiff filed a complaint in two counts for the several sums of $9,671.10 and $6,158.65, making a total demand of $15,829.75, besides interest. Both demands arose out of a contract of date October 18, 1927, and were for unpaid balances due for gasoline sold and delivered to the defendant under said contract. After filing the original complaint, an attachment was levied against property of the defendant. Thereupon, for the purpose of obtaining release of said attachment, the defendant herein executed an undertaking in the sum of $19,000, whereby it promised "that in case the plaintiff recover judgment in the action, we will on demand pay to plaintiff the amount of whatever judgment may be recovered in said action, together with the percentage, interest and costs". The plaintiff having recovered judgment in the action in the sum of $18,032.20, which judgment was not paid, plaintiff brought this action to recover on the bond. The judgment herein, from which the defendant Seaboard Surety Corporation of America appeals, is a judgment entered pursuant to an order granting a motion for judgment on the pleadings, after answer filed by the defendant.

The principal contention of appellant is that it was exonerated from the penalty of its undertaking by reason of amendments to the complaint in the original action, made after the bond was executed, whereby the liability of the surety was changed. *Turner* v. *Fidelity & Deposit Co. of Maryland,* 187 Cal. 76 [200 Pac. 959], was an action similar

to the case at bar, where the same kind of defense was presented. After making a statement of the principal rules governing cases of this kind, including a reference to leading cases on the subject, the court said: "The weight of authority, however, seems to sustain the rule that unless the amendments are such as to substitute new or different parties, or to state a new and independent cause of action, the sureties or guarantors are bound by the judgment.

"It is generally held that where a surety whose obligation discharges from attachment the assets of the debtor upon which the attaching creditor had a right to rely for security of his claim, such surety ought not to be exempted from liability unless the obligation with reference to which he contracted has been essentially changed without his consent. Having made himself responsible for 'any judgment recovered in the action', it would be unduly limiting his agreement to permit him to plead successfully an amendment that did not alter the 'nature and character' of the original claim." Further on in the opinion the court said: "The obligation which it was sought to enforce against the principal through the suit and judgment demanded was the payment of the liability arising under the contracts set out in the original complaint. There was no alteration or modification of that contractual liability of the defendant. The plaintiff was not estopped by his original complaint from making any corrections or supplying any omissions by amendment which were proper or necessary to fully set forth the liability of the defendant under the contract sued on. The surety entered upon its contract to guarantee payment of the judgment, any judgment on the cause of action, with presumptive understanding that the original complaint might be amended to cover any damages which had occurred prior to commencement of suit from a breach of the contracts which constituted the cause of action, though omitted from the original complaint. (*Bierce* v. *Waterhouse,* 219 U. S. 320 [55 L. Ed. 237, 31 Sup. Ct. 241, see, also, Rose's U. S. Notes].)

"If the liability of the release bond had been predicated upon a judgment on the precise facts pleaded in the original cause of action, then such complaint would be the measure of the liability, but the surety contracted upon the basis of whatever judgment was obtained in the action, and it will

be presumed to have taken into consideration the possibility of changes by amendment in the extent and nature of the liability incident to the cause of action." And, finally, with reference to the right of a surety to rely upon the strict terms of its contract the court said: "In this case the Surety Company stands upon a purely technical defense, and while it is true that the rule is in its favor that it may rely upon the strict terms of its contract, there is no reason in law or equity why the same liberality of construction and interpretation of those terms should not be applied as in construing any other contract. In the matter of the obligations of corporations organized to execute surety bonds and securities as a business there is a growing disposition in the courts to hold such sureties to their obligations unless there has been some material departure from the conditions of the agreement. (21 R. C. L., p. 1160; Ann. Cas. 1912B, 1087.)"

█ The law being thus clearly stated we have only to determine upon its proper application to the facts of the case at bar. Since the judgment rendered herein is a judgment on the pleadings in a case where the complaint states a good cause of action, necessarily the judgment is based upon a decision that the answer filed by the defendant does not state a defense to the action. The theory of the defense relied upon by the defendant is that the cause of action upon which the plaintiff recovered judgment in the prior action "is not the same cause of action alleged by plaintiff in its original complaint pursuant to which this defendant filed its undertaking under release of attachment as surety for said Eureka Petroleum Corporation". In support of this defense the answer herein sets forth the original complaint, and also the amended complaint in the former action, and alleges that the judgment in that action was rendered on said amended complaint. For the purposes of the present decision we must assume that the facts of the case are truly alleged in the answer herein; that is to say, that the judgment in the former action was based on said amended complaint, and that the defendant did not consent to nor did it have any knowledge of the filing of said amended complaint at the time of the filing thereof. The allegation in the answer, "that the judgment recovered by the plaintiff herein against the Eureka Petroleum Corporation is not the judgment which this defendant in its undertaking under-

took and agreed to pay'', is a statement of a conclusion of law which may or may not be correct. It presents the very question which we are called upon to decide, and is controlled by the contents of the original complaint and the amended complaint in said former action. Thus we are called upon to examine the causes of action stated in the first complaint and compare them with the amended complaint. So far as this defense is concerned, before we can hold that the judgment against the surety on the bond should be reversed, we must first be convinced that said former judgment was founded upon a cause or causes of action essentially or substantially different from the causes of action in the first complaint or, in other words, that the amended complaint stated ''a new and independent cause of action'' not included in the first complaint.

On October 18, 1927, plaintiff and the Eureka Petroleum Corporation entered into a written contract for the sale by the plaintiff to said corporation of gasoline to be delivered from time to time at the agreed price of ten cents per gallon. The agreement was made for the term of thirty days from date and was to continue thereafter until notice of termination given by either party. The complaint in the former action was in two counts, each of which stated a cause of action arising out of said contract. In the first count the complaint alleged delivery to the defendant, between December 13, 1927, and December 20, 1927, of gasoline of the aggregate price and value of $9,671.10. Also in this count there were set forth six checks which had been drawn by the defendant and delivered to the plaintiff in the aggregate sum above stated, all of which on presentation to the bank against which they were drawn were returned unpaid for the reason that the defendant had not sufficient funds for the payment thereof. It was alleged that thereafter the plaintiff made demand upon the defendant for the payment of said total sum represented by said checks, and that the defendant had failed, neglected and refused to pay said sum of $9,671.10, or any part thereof. In the second count of the first complaint it was alleged that between April 1, 1928, and May 5, 1928, plaintiff sold and delivered gasoline to the defendant under the terms and conditions of said contract, upon which sales and deliveries there remained due, owing and unpaid the sum of $6,158.65. Plaintiff prayed judgment for the said two unpaid amounts of money.

The amended complaint was in two counts, of which the first was substantially the same as the first count contained in the first complaint. The second count of the amended complaint contains the changes in pleading which appellant here contends amounted to a new and different cause of action from that in relation to which it gave its undertaking for release of the attachment. In substance the allegations of this count are as follows: After alleging the execution of the agreement of October 18, 1927, the complaint sets forth the following transactions. That between October 27, 1927, and January 1, 1928, plaintiff pursuant to the terms and conditions of said contract, sold and delivered to the defendant gasoline in a large stated amount. That defendant prior to January 1, 1928, made payments on account, leaving a balance on said last date in the sum of $23,226.70. "That on or about the 1st day of January, 1928, the said contract hereinabove referred to was cancelled by plaintiff by reason of the defendant's default in the performance of said contract, and a new contract entered into by and between the plaintiff and defendant for the sale to defendant by plaintiff of such amount of gasoline as plaintiff was able and willing to deliver from time to time to defendant at a price of ten and one-quarter cents (10¼c) per gallon, payable cash on delivery.

"That defendant agreed to pay plaintiff cash in advance for all gasoline delivered under the terms and conditions of said new contract.

"That defendant further promised and agreed to pay to plaintiff the sum of approximately twelve hundred ($1,200.00) dollars per week in addition to cash payments for gasoline delivered from plaintiff to defendant until said balance of twenty-three thousand two hundred twenty-six and 70/100 ($23,226.70) dollars was fully paid.

"That thereafter and between the 1st day of January, 1928, and the 12th day of April, 1928, the plaintiff sold and delivered to the defendant gasoline of the aggregate price and value of seventy-six thousand nine hundred eighty-three and 86/100 ($76,983.86) dollars, at the rate of ten and one-quarter (10¼c) cents per gallon.

"That thereafter, on or about the 12th day of April, 1928, the said defendant having failed to pay to the plaintiff the sum of $1,200.00 per week on account of the balance due and

owing on the 1st day of January, 1928, as hereinbefore alleged, and having failed to pay to the plaintiff the agreed purchase price of gasoline furnished by plaintiff to the defendant subsequent to said 1st day of January, 1928, in accordance with the contract hereinbefore alleged, plaintiff cancelled the contract hereinbefore set forth and alleged between plaintiff and defendant, and terminated the same, and the plaintiff and defendant entered into a new and separate agreement wherein and whereby plaintiff agreed to sell to defendant such amount of gasoline as it was able and willing to deliver to defendant from time to time as defendant might request at a price of eleven and one-half (11½c) cents per gallon, and that the said defendant agreed to pay plaintiff the said price of 11½c per gallon for all gasoline delivered to the defendant under the terms of such contract and said purchase price to be paid in advance of and prior to the delivery of said gasoline by plaintiff to the defendant, and defendant as a part of said contract agreed to pay to the plaintiff, in addition to the price of said gasoline thereafter to be delivered to the defendant, the sum of twelve hundred ($1,200.00) dollars per week to be applied on account of gasoline previously delivered by plaintiff to the defendant and then unpaid for as herein alleged.

"That pursuant to the contract last above referred to and entered into on the 12th day of April, 1928, plaintiff delivered to the defendant between the 12th day of April, 1928, and the 1st day of May, 1928, gasoline of the aggregate price and value of eleven thousand five hundred and ninety 01/100 ($11,590.01) dollars at the rate of 11½c per gallon in accordance with the terms of said contract.

"That on the 1st day of May, 1928, the defendant having failed and refused to comply with the terms of said contract last hereinabove referred to and entered into between the plaintiff and defendant on the 12th day of April, 1928, the plaintiff did cancel said contract and the plaintiff and defendant entered into a new contract on the said 1st day of May, 1928, wherein and whereby plaintiff agreed to sell to the defendant, and defendant agreed to purchase from the plaintiff, such amount of gasoline as plaintiff was able and willing to sell to the defendant from time to time, not exceeding the amount which plaintiff should request and desire

at and for a price of 12½c per gallon, and defendant agreed to pay said price to the plaintiff for gasoline so furnished.

"That pursuant to the contract last hereinabove referred to, and entered into between plaintiff and defendant on the 1st day of May, 1928, plaintiff delivered to the said defendant gasoline in the aggregate price of three thousand seven hundred twenty-nine and 76/100 ($3,729.76) dollars, at the agreed price of 12½c per gallon."

"Plaintiff further alleges that the defendant has failed, neglected and refused to pay any part of the balance due from defendant to plaintiff in the sum of $23,226.70 for gasoline sold and delivered up to the 1st day of January, 1928, or any part of the purchase price of gasoline sold and delivered to defendant as hereinbefore alleged subsequent to the 1st day of January, 1928, up to and including the 5th day of May, 1928, except the following amounts paid by the defendant to the plaintiff on the dates as follows." Here follows a list of said amounts. "The balance, to-wit: $15,577.89, remains wholly due, owing and unpaid.

"That notwithstanding the several agreements of the defendant made on or about January 1, 1928, and subsequent thereto, to pay for all gasoline sold and delivered under the said several contracts at the time of delivery thereof and in addition thereto to pay the sum of at least $1,200.00 per week upon the unpaid balance for gasoline previously sold and delivered as hereinbefore alleged, the defendant has at all times failed and refused to comply with said contracts as to payment, and that from time to time the said defendant in drawing checks, has for some one or other of the aforesaid payments, endorsed memorandum thereon as plaintiff is informed and believes designating that such checks or the proceeds thereof shall be credited upon prior deliveries or amounts of gasoline sold or delivered prior to the issuance of such checks, and that for that reason the plaintiff is not now able and cannot designate the exact amount paid by the defendant for gasoline sold and delivered under the said several contracts hereinbefore alleged, but this plaintiff alleges that defendant has paid no more nor has any more money been paid on account of any of the amounts of gasoline sold and delivered as hereinbefore alleged except those as herein expressly stated."

The amended complaint closes with a prayer for judgment in the sum of $15,737.23. This amount it may be noted is $192.52 less than the amount demanded by the prayer of the first complaint. It further appears that the cause of action stated in the second count of the amended complaint, and the amount for which judgment was demanded includes the cause of action for $9,671.10 set forth in the first count of each complaint. The principal differences are found by comparing the second counts of the two complaints. In the second count of the first complaint plaintiff sought to recover $6,158.65 for gasoline sold and delivered between April 21, 1928, and May 5, 1928, and in the second count of the amended complaint the statement of facts shows that on January 1, 1928, there remained due for gasoline sold under the contract, the sum of $23,226.70. Then follows the statement of the further history of the transactions, which we have shown by quotation from said second count of the amended complaint.

The original complaint in said action was filed June 1, 1928; the undertaking for release of attachment was executed June 4, 1928; the amended complaint was filed April 9, 1930. The judgment in that action was entered July 3, 1930, in the sum of $18,032.20, damages and interest. The present action was commenced October 22, 1930, and after answer filed the court rendered judgment on the pleadings as first herein stated.

A careful comparison of the first complaint in said action with the amended complaint upon which it is alleged that the judgment in that action was rendered has brought us to the conclusion that the amended complaint did not state a new and independent cause of action not included in the first complaint. Heretofore we have pointed out that the demand for $9,671.10 is included in the amount of the demand stated in the second count of the amended complaint. We are satisfied that the remaining $6,066.13 of the principal sum demanded in the amended complaint, was included within the second count of the first complaint which called for the principal sum of $6,158.65, for gasoline delivered between April 1, 1928, and May 5, 1928. This presumably was the unpaid balance due for the gasoline delivered during the period ending May 1, 1928, as stated in the second count of the first complaint. Although the second count of the amended complaint says that on January

1, 1928, the prior contract was canceled by reason of plaintiff's default in performance thereof, the terms of the new contract, entered into concurrently with the cancellation of the old one, included a renewal of the agreement to pay the amount due on the original contract. The indebtedness upon which the action was brought, as stated in the first complaint, was in reality the same indebtedness which constituted the cause of action in the amended complaint, and upon which the judgment was rendered. We therefore conclude and decide that the liability of the surety was not changed, and that the defendant was not exonerated from the penalty of its undertaking by reason of the amendments to the complaint, or the filing of the amended complaint, in the original action, made after the bond was executed.

On the third day of July, 1930, when the judgment against Eureka Petroleum Corporation was entered, a stipulation in writing was made between said corporation defendant and the plaintiff by their attorneys, that execution upon the judgment "may be stayed by order of court to and including the 31st day of August, 1930". The defendant surety corporation by its answer in this present action alleged the fact of said stipulation, and that execution was stayed accordingly. The court in its findings herein declared that the filing of said stipulation did not exonerate the bond of the defendant. Appellant now contends that it was released by virtue of said stipulation, and that this was a defense to the action because the execution of such stipulation amounted to an extension of time on the liability without its consent. We may assume without reviewing the decisions on the subject, that a surety is exonerated in like manner with a guarantor (Civ. Code, sec. 2840), and that a guarantor is exonerated under the conditions set forth in section 2819 of the Civil Code. One of these conditions is that by some act of the creditor, "the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended". The stipulation, made on the day of entry of the judgment (July 3, 1930), that execution upon the judgment "may be stayed by order of court to and including the 31st day of August, 1930," does not lend support to the contention here made by appellant, unless we can say that by such stipulation and order the remedy of the creditor, in respect to the original

obligation of the principal, was in some way "impaired or suspended". Sometimes a rule of law may be defeated by a too strictly literal, as well as by a too liberal, application of its provisions. Reasonable interpretation is the breath of life in the rule. To solve the immediate question here, we should consider the group of procedural facts which attend the entry of a judgment. In relation to the right of appeal, a judgment of the superior court is not final until the expiration of sixty days from the date of entry. In the event of an appeal taken, and stay bond given, enforcement of the judgment might be postponed, without consent of the judgment creditor, for much longer than sixty days. It is within the limits of judicial notice that short periods of stay of execution arranged by consent, are customary incidents of litigation. They are very much on a parity with continuances, for the convenience of parties, during a trial. The fact that these incidents are so common, accounts for the scarcity of decisions on the direct question now presented for our consideration. Yet we are not entirely without a guiding light in the darkness. In *Preston* v. *Hood*, 64 Cal. 405 [1 Pac. 487], the action was brought to recover judgment on a bond like the one which is the subject of the present action. In the attachment suit, when the case came on for trial, judgment by consent of counsel in open court was directed to be entered in favor of the plaintiffs, and a minute order was made that "By consent of respective counsel, it is ordered that proceedings on execution be stayed for sixty days." At the trial of the suit on the bond given for release of attachment, the sureties claimed that this extension, being without their consent, released them from liability on the undertaking. The Supreme Court said: "There is no doubt as to the general position, that if the obligee make a valid contract with the obligor, for a consideration, to extend the time for payment, such contract will discharge the sureties if made without their consent. The question is: Does this case come within the general proposition?" The court observed that the judgment had been by consent and that by consenting to the judgment, the defendant practically waived any ground he might otherwise have had for motion for new trial and of appeal. But we cannot see that this was the particular ground of the decision. The real foundation of that decision evidently was the fact that, in the ordinary course of busi-

ness of this kind, a creditor may find more advantage to himself and more speed in the collection of the debt by consenting to an order for temporary stay of execution. In effect, the court by its decision held that the mere consent of counsel to the entry of an order staying execution for sixty days is not an impairment or suspension of the remedies or rights of the creditor against the principal in respect to the original obligation. Upon this authority and for these reasons, we think that appellant was not released by virtue of said stipulation.

The judgment is affirmed.

Houser, J., and York, J., concurred.