**TEXACO REFINING AND MARKETING, INC.,**
**Plaintiff–Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, INC.,**
**Defendant–Appellee.**

**No. 88–6332.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1989.

Decided Feb. 8, 1990.

---

**7.** We note also that the district court dismissed the action before the 60 days had run.

**638**

John F. Kimberling, Dewey, Ballantine, Bushby, Palmer & Wood, Los Angeles, Cal., for plaintiff-appellant.

Bruce A. Bevan, Musick, Peeler & Garrett, Los Angeles, Cal., for defendant-appellee.

Before NORRIS, REINHARDT and TROTT, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

In 1978, appellant Texaco Refining and Marketing Inc. (Texaco) and Oasis Petroleum Corp. (Oasis) entered into a contract obligating Texaco to sell and Oasis to buy oil. Appellee Aetna Casualty and Surety Co., Inc. (Aetna) issued a bond guaranteeing payment for Oasis' oil purchases under the contract.

On December 5, 1985, Texaco and Oasis executed a Seventh Amendment to the contract. The amendment, which was by its own terms "effective as of October 1, 1985," restructured Oasis' past-due obligations for October and November 1985 deliveries. Under the terms of the amendment, Oasis executed two promissory notes totaling $9.4 million. Oasis also wired a $7.2 million cash payment to Texaco on December 4, 1985.

Although Texaco and Aetna discussed the contract modifications prior to the execution of the Seventh Amendment, Aetna never consented to the amendment. Shortly after Texaco and Oasis agreed on the amendment, Oasis defaulted on its note obligations. One month later, Oasis filed for bankruptcy. The bankruptcy trustee sought disgorgement of the $7.2 million which Oasis had paid to Texaco on December 4, 1985 on the ground that the payment was a voidable preference.

Texaco filed this diversity action seeking to require Aetna to pay the notes on which Oasis defaulted and to reimburse Texaco for any part of the December 4 payment which Texaco was required to disgorge. The district court granted summary judgment in favor of Aetna. We affirm.

We review a summary judgment de novo. *Kruso v. International Tel. & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). The district court's interpretation of state law is also reviewed de novo. *In re McLinn*, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

I

Texaco argues that the district court erred in holding that Aetna's obligations under the bond were canceled by the Seventh Amendment to the contract between Texaco and Oasis Petroleum Corp. The controlling provision of state law is California Civil Code § 2819, which states:

A surety is exonerated, except so far as he may be indemnified by the principal, if by an act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in re-

spect thereto, in any way are impaired or suspended.

Section 2819 provides a defense for the surety when the principal obligation is materially altered without the consent of the surety. "The theory underlying the rule is that a surety cannot be held beyond the express terms of his contract...." *ITT Diversified Credit Corp. v. Highlands Ins. Co.*, 191 Cal.App.3d 301, 236 Cal.Rptr. 433 (1987) (quotation omitted).

It is clear that the Seventh Amendment materially altered Oasis' principal obligation,[1] and, indeed, Texaco makes no argument that the modifications were not material. However, Texaco advances other reasons why section 2819 does not exonerate Aetna.

■ First, Texaco argues that Aetna must prove that the Seventh Amendment changes prejudiced Aetna in order to claim exoneration under section 2819. This argument fails. We agree with the district court that the language of section 2819 makes no reference to prejudice and by its terms applies whenever the obligation of the principal "is altered *in any respect.*" (Emphasis added.) In addition, California caselaw dating back to *First Congregational Church of Christ v. Lowrey*, 175 Cal. 124, 165 P. 440 (1917), rejects the contention that a showing of prejudice is necessary under section 2819. *Lowrey* said: "Our code [§ 2819] speaks with absolute finality upon the subject.... [I]f there has been ... a change in the contract in any (material) respect, the inquiry there ends, and ... it is not a subject of inquiry whether the alteration has or has not been to [the surety's] injury." *Id.* at 126, 165 P. 440.

Texaco argues that *Lowrey* has been effectively overruled, and that California courts now require a showing of prejudice as an element of the section 2819 exoneration defense. However, neither *Roberts v. Security Trust & Sav. Bank*, 196 Cal. 557, 238 P. 673 (1925), nor *ITT Diversified*

*Credit Corp. v. Highlands Ins. Co.*, 191 Cal.App.3d at 301, 236 Cal.Rptr. 433—the two cases on which Texaco relies—supports Texaco's argument. *Roberts* is expressly limited to "the performance of contracts for the erection of buildings, wherein provision is made for modifications or for changes as the work progresses," and reaffirms *Lowrey* as "correct as a general statement" of the "abstract proposition of law" for which it stands. 196 Cal. at 565, 238 P. 673. *ITT,* which is the more recent of the two cases cited by Texaco, continues to adhere to the rule that "a surety cannot be held beyond express terms of his contract," and notes that "the proper approach is to determine whether [the modification] materially modified the original obligation in a manner not contemplated by the surety." 191 Cal.App.3d at 308, 236 Cal.Rptr. 433 (quotation omitted). Nowhere does *ITT* state that a showing of prejudice is necessary to make out a defense under section 2819.

Texaco also contends that our resolution of the section 2819 issue is controlled by *United States v. Reliance Ins. Co.*, 799 F.2d 1382 (9th Cir.1986), claiming that *Reliance* holds that a showing of prejudice is required under California law. Texaco is correct that *Reliance* required a showing of prejudice; *Reliance* does *not*, however, interpret California law. *Reliance* was brought under 28 U.S.C. § 1345, which obligated the court to apply federal common law. *See id.* at 1385. Because "[t]here is no clear body of federal common law with regard to modifications of an underlying bonded contract," the court "look[ed] to state substantive law for guidance." *Id.* The court's discussion of the exoneration issue makes it clear that the court looked to the substantive law of a number of jurisdictions, not just to California law. *See id.* Although it is possible that the *Reliance* court *should* have looked only to California law, *see United States v. California*, 655 F.2d 914, 917 (9th Cir.1980), the court did not do so and did not purport to

---

**1.** Among the material alterations were a reduction in the number of barrels of oil Oasis was required to purchase in November 1985 from 600,000 to 341,000; modifications in the terms under which Texaco extended credit to Oasis; and the termination of Oasis' arbitration rights under the pre-Seventh Amendment OAS–20 agreement.

do so. *Reliance* is therefore not controlling on the issue of California law presented here.

Because the Seventh Amendment modifications were material and no showing of prejudice is required under section 2819, the Seventh Amendment was sufficient to trigger the section 2819 exoneration provision.

## II

■ Texaco's second argument on appeal is that Oasis' $7.2 million wire transfer to Texaco on December 4, 1985, one day before the Seventh Amendment was executed, was a payment pursuant to the original contract (and hence was covered by Aetna's bond) rather than to the Seventh Amendment. Accordingly, Texaco contends, Aetna must reimburse the $3 million portion of the December 4 payment that Texaco disgorged to Oasis' bankruptcy trustee, because Aetna's exoneration defense cannot apply to a payment that was made before the occurrence of the exonerating event (i.e., the Seventh Amendment).

Again, Texaco's argument fails. The payment, although wired on December 4, was actually part of the Seventh Amendment agreement. Texaco has admitted that the payment was made "pursuant to the Seventh Amendment" (Response to Request for Admission No. 32), and that Texaco would not have consented to the Seventh Amendment transactions without the payment (Response to Request for Admission No. 7). In addition, the funds were not accepted for payment until December 5 (Response to Request for Admission No. 59), and would have been returned to Oasis in the event the Seventh Amendment transactions were not completed. Because the payment was part of the Seventh Amendment transaction, it is within the scope of Aetna's section 2819 exoneration defense.

## III

■ Texaco's third argument, relying on the language in section 2819 stating that "[a] surety is exonerated, except so far as he may be indemnified by the principal," is that Aetna fails to qualify for section 2819

exoneration because Aetna was entitled to indemnification by Oasis and its parent company, Triad. This argument also fails. As the district court correctly noted, "[t]he only reasonable interpretation of this exception is to require that the surety *has received* the indemnified amount, physical collateral or a lien on property." Excerpt of Record (E.R.) at 744 (emphasis added). A mere agreement to indemnify (which is all Aetna received here) is insufficient to trigger the exception. *See* A. Stearns, *The Law of Suretyship* § 6.25, at 148 (James Elder 5th Ed.1973); W. Conners, *California Surety and Fidelity Bond Practice* § 25.13, at 352 (1969).

A number of considerations support this reading of the statute. First, California Civil Code section 2847 automatically gives sureties a right of indemnity. Thus, if a mere right of indemnity (rather than actual indemnification) sufficed, the exception would swallow the rule of section 2819: *Every* case would be one in which the surety "may be indemnified." Second, the California legislature's Note accompanying section 2819 states:

> "Note.—a guarantor exonerated except insofar as he may be indemnified by the principal."—*Moore v. Paine*, 12 Wend., p. 123.

*Moore*, an 1834 New York case, imposed liability on sureties only because they had received "the whole amount to become due.... They held in their hands a complete indemnity against the bond." 12 Wend. at 126. Thus, the common law authority to which the legislature referred in passing section 2819 referred to actual indemnification, not a mere guarantee of indemnification. Third, as the district court pointed out, Texaco's proposed interpretation "would invite collusion between the creditor and debtor." E.R. at 744.

## IV

■ Texaco's final argument is that Aetna is estopped from claiming exoneration because it failed, when informed of the proposed Seventh Amendment modifications, to inform Texaco that it would not

continue coverage under the bond if the modifications were made. This argument, too, lacks merit.

To make out a successful claim of estoppel, Texaco must show that it *reasonably* relied upon the defendant's misrepresentations. *See Guild Wineries & Distilleries v. Land Dynamics,* 103 Cal.App.3d 966, 978, 163 Cal.Rptr. 348 (1980); 7 B. Witkin, *Summary of California Law* § 132 (Equity), at 5352 (8th ed.1974). Texaco has pointed to no misrepresentation by Aetna upon which it could reasonably have relied in proceeding with the Seventh Amendment agreement. Indeed, undisputed evidence shows that Aetna specifically warned Texaco *not* to rely on continued coverage by Aetna. Accordingly, Texaco's estoppel argument fails.

As there are no genuine issues of material fact and the district court correctly applied the relevant substantive law, the summary judgment in favor of Aetna is AFFIRMED.